MAGNOLIA PETROLEUM CO. et al. v. NATIONAL OIL TRANSPORT CO.
et al.

(Circuit Court of Appeals, Fifth Circuit. January 24, 1923.)

No. 3932.

1. **Salvage** ⊗═36—Refusal to render assistance and threat to leave, until exorbitant demand acceded to, held to invalidate contract.

The refusal of the master of a towboat to render assistance to a barge, which had been left at anchor by its own tug, and his threat to leave unless his exorbitant demand for $15,000 for towing the barge into port was acceded to, amounted to moral compulsion, invalidating the contract signed by the master of the barge to pay the amount demanded.

2. **Salvage** ⊗═13—Towing to port of barge which had been left at anchor by her tug held a salvage service, but of low order.

Where barge, left at anchor by her tug while she went to port after coal, because of inability to trim cargo from lack of fresh water, and consequent uselessness of pumps, would have been in serious danger in case of heavy weather or rough sea, it was an act of prudence on the part of her master to make an effort to get into port, and towing her into port was a salvage service, though of low order.

3. **Salvage** ⊗═34—Allowance of double the towage rate plus allowance for lost time held ample for towing barge into port.

Where a towboat, worth $225,000 and having in tow a barge, without cargo, worth $300,000, towed into port another barge, worth $225,000, and having a cargo of oil worth $30,000, and which had been left at anchor by her own tug and was in a helpless condition, an allowance of $1,400, which was double the towage rate, plus $300 for the loss of time, not exceeding half a day, held amply sufficient.

4. **Salvage** ⊗═26—Refusal of interest held justified by exorbitant demand.

Where master of towboat demanded agreement to pay $15,000 before rendering salvage service of low order, for which $1,700 was amply sufficient, the court was justified in refusing to allow interest.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Libel in personam by the Magnolia Petroleum Company and others against the National Oil Transport Company and others, which brought in the United States as defendant. From a decree (281 Fed. 336) for an insufficient amount, libelants appeal, and the Transport Company files cross-assignments of error. Affirmed in part, and modified and affirmed in part.

F. D. Minor, of Beaumont, Tex. (W. H. Francis, of Dallas, Tex., and Minor & Minor, of Beaumont, Tex., on the brief), for appellants.

James W. Ryan, of New York City (T. Catesby Jones, of New York City, and Bigham, Englar & Jones, of New York City, on the brief), for appellees.

J. Frank Staley, Sp. Asst. Atty. Gen. (H. M. Holden, U. S. Atty., of Houston, Tex., Edouard F. Henriques, Sp. Asst. U. S. Atty., of New Orleans, La., on the brief), for the United States.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. In October, 1920, the National Oil Transport Company chartered the steam tug Barryton, owned by the Unit-

⊗═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ed States from the United States Shipping Board Emergency Fleet Corporation. The charter party was for 60 days, and authorized the use of the tug in towing·the charterer's oil barge Bolikow between Tampico, Mexico, and Galveston. The charter party provided that the charterer should pay for all fuel, and that the tug's master, although appointed by the owner, should be under the charterer's orders and directions "as regards employment, agency, or other arrangements."

The Barryton used coal for fuel, and while she was at Aransas Pass, Tex., her master on November 9th notified the charterer that he could not go any farther without coal. The charterer replied that it would furnish coal at Tampico, and ordered the master·to proceed to that place. In obedience to this order, the Barryton arrived on November 11th at Tampico, where great difficulty was encountered in procuring a supply of coal. On November 16th the charterer telegraphed the owner's agent that the Barryton was unable to sail on account of shortage of fuel, and that it was sending 100 tons from Galveston. Finally 41 tons of coal were procured by the charterer, and the Barryton still had 25 additional tons in her bunkers, and with this 66 tons the Barryton, on November 21st, cleared from Tampico for Galveston, with the oil barge Bolikow in tow. The coal taken on at Tampico proved to be of a very inferior quality, and was entirely consumed by late in the afternoon of November 22d, thus leaving in the bunkers of the Barryton only 25 tons of coal. Her master came to the conclusion that he did not have sufficient coal to enable him to reach Galveston, and he anchored the Bolikow slightly in shore ·from the usual course of travel, within about 4 miles of land, and about 120 miles distant from Tampico, and then returned to Tampico for the purpose of replenishing his supply of fuel, and with the intention of returning and continuing his voyage. He arrived there on the morning of November 23d. A sufficient supply of fuel of good quality was procured, but after considerable delay, as a result of which the Barryton did not leave Tampico until noon of the 25th. She arrived at the place where she had anchored the Bolikow about midnight, and continued to search for her until informed by another tug of the National Oil Transport Company that the Bolikow was being towed to Tampico.

The Bolikow was equipped with steam pumps, but ran out of fresh water for her boiler on the morning of November 25th. She was equipped, also, with sails, but her captain did not consider it advisable to use them, unless his pumps were working, for the reason that the cargo tanks leaked and were liable to cause a list. It was therefore impossible to navigate the Bolikow. On the morning of November 25th, the Bolikow sighted and by signal called alongside the towboat George C. Greer, which had in tow a barge known as M. P. C. Barge No. 7, bound from Beaumont to Tampico. The Greer and Barge No. 7 were both owned by the Magnolia Petroleum Company.

The Bolikow was not equipped with wireless, and her captain requested the master of the George C. Greer to use that tug's wireless

equipment and communicate with the Bolikow's owners, either at Tampico or Galveston. It is admitted by the pleadings that the master of the Greer attempted to comply with·this request, but was unable to do so. Thereupon the captain of the Bolikow entered into negotiations with the master of the Greer for a tow of the Bolikow to Tampico. The master of the Greer demanded $20,000. The captain of the Bolikow refused to pay that amount, but stated he would pay anything within reason. Finally the master of the Greer stated that he would perform the service for the sum of $15,000, and that he was going to leave if the captain of the Bolikow did not agree to pay it. Under these circumstances the captain of the Bolikow signed an agreement to pay $15,000 to the owners of the Greer for towing the Bolikow to Tampico. The Bolikow was then made fast to Barge No. 7, and was towed by the Greer without incident·back to Tampico. The weather was fine and the sea smooth from the time the Bolikow was anchored at sea until she was towed into port.

The Bolikow was a wooden tank barge, 267 feet in length, 46 feet beam, 23.6 feet depth of hold, with a carrying capacity of about ·24,000 barrels of oil, and was worth $225,000. She had aboard a full cargo of oil, worth $30,000. The George C. Greer was worth $225,000. M. P. C. Barge No. 7 was of about the same size as the Bolikow, and was worth $300,000. She had no cargo on board. The George C. Greer came alongside the Bolikow about 10:30 a. m., began towing her at 1:30 p. m., and completed that service on the next day about 2:30. According to the evidence, towage rates for a tug, of the capacity of the George C. Greer, ranged from $500 to $600 per day.

In December, 1920, the Bolikow was destroyed by an explosion. Thereafter the Magnolia Petroleum Company filed its libel in personam against the National Oil Transport Company to enforce the salvage contract. The National Oil Transport Company brought in the United States, under admiralty rule 56, as being liable for whatever amount the libelant might recover. The salvage contract was defended against on the ground that it was unenforceable, because made under circumstances which amounted to moral compulsion.

The District Court refused to enforce the contract, but awarded salvage in the sum of $3,000 against the National Oil Transport Company, and found in ·favor of the United States. The libelants have appealed from this award as inadequate, and the National Oil Transport Company has filed cross-assignments of error, and contends that the United States, as the owner of the Barryton, should be held liable, and be required to pay whatever amount is decreed in favor of the Magnolia Petroleum Company.

[1-3] We are of opinion that the District Court was entirely correct in refusing to enforce the contract for salvage. The refusal of the master of the Greer to render assistance, and his threat to leave the Bolikow unless his exorbitant demand was acceded to, amounted to moral compulsion, and the contract, which he procured by the methods. adopted, is not protected or made binding and valid by the rule laid down in The Elfrida, 172 U.·S. 186, 19 Sup. Ct. 146, 43 L.

Ed. 413. The only element of salvage present in this case was the apparent danger to the Bolikow and her crew. The Bolikow, because of her inability to trim cargo for lack of fresh water, and the consequent uselessness of her pumps, would have been in serious danger in case of heavy weather or a rough sea, and we think it was an act of prudence upon the part of her captain to make an effort to get into port. The helpless condition of the Bolikow raised the assistance rendered from a towage to a salvage service. But the salvage service was of a low order, and the amount awarded therefor by the District Judge is, in our opinion, too, liberal. The utmost time contended for is from 10:30 a. m. of November 25th to 2:30 p. m. of the next day, or a period of 28 hours, and includes 3 hours before the Bolikow was taken in tow. The greatest allowance for towage which could be justified would be $700. Double the towage rate, under the facts of this case, would be full compensation. The Catalina, 105 Fed. 633, 44 C. C. A. 638; The Colonel Moore (C. C. A.) 263 Fed. 868; The Jean L. Somerville (C. C. A.) 286 Fed. 35 (decided December 19, 1922). The time lost by the Greer did not exceed half a day, and was of the value of about $300. We are of opinion, therefore, that an award of $1,700 is amply sufficient.

[4] The libelant's demand was so out of proportion to the services rendered as to justify the court in refusing to allow interest. Merritt v. Chubb, 113 Fed. 173, 51 C. C. A. 119. The evidence shows that the National Transport Oil Company undertook to supply fuel to the Barryton, and it therefore becomes immaterial to inquire whether it was obliged to do so under its charter from the Shipping Board.

The decree in favor of the libelant is modified, by reducing the amount of the salvage award from $3,000 to $1,700, and, as so modified, it is affirmed. The decree in favor of the United States is affirmed.

It is ordered that the libelant pay its own costs on this appeal, and that the National Oil Transport Company pay the costs of appeal of itself on the cross-assignments of error.