**UNITED STATES v. LESTER F. ALEXANDER & CO. et al.**

(Circuit Court of Appeals, Fifth Circuit. April 13, 1925.)

No. 4282.

1. Salvage ⚙️13—Allowance of salvage for services rendered in towing helpless steamship held proper.

Where steamship was helpless at sea and was in some danger, though danger was not imminent, and was towed by one tug to safer anchorage where master could conveniently make all arrangements for towage to other point, and was towed by other tug to such point, allowance of salvage for services rendered by both tugs was proper.

2. Salvage ⚙️34—Allowance of less than double ordinary contract towage rate held not excessive.

Allowance, as salvage, of considerably less than double the ordinary contract towage rate for towing steamship which was helpless at sea to safer anchorage, held not excessive.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Salvage proceeding by Lester F. Alexander & Co. and another against the United States. From a decree awarding salvage, the United States appeals. Affirmed.

Edouard F. Henriques, Sp. Asst. U. S. Atty., of New Orleans, La.

Nat. W. Bond, John D. Grace, and M. A. Grace, all of New Orleans, La., for appellees.

Before WALKER and BRYAN, Circuit Judges, and BARRETT, District Judge.

WALKER, Circuit Judge. The appellant, which asserts a claim, based on the assignment to it of claims of seamen for services to the steamship Minnesota, against the $3,750 for which that vessel was sold, complains of two salvage awards against that vessel, one of $625 in favor of Lester F. Alexander & Co., and the other of $1,240 in favor of Bisso Towboat Company. On January 27, 1921, the Minnesota, when at anchor in the Gulf of Mexico, off the mouth of the Mississippi river, and having boiler troubles which disabled it from proceeding under its own power, sent out a wireless call for help, which was responded to by the tug Ionian, then under charter to Alexander & Co. The Ionian towed the Minnesota to an anchorage just outside of South Pass, where she again anchored. There was no agreement as to compensation for that service, but a charge of $500 therefor and of $125 for the use of a hawser was allowed. The Ionian was engaged in the service from 3 o'clock p. m. until 9 p. m., and got back to its original station at midnight the same night. The next day the captain of the Minnesota by wireless arranged with Bisso Towboat Company to tow the ship to New Orleans for $1,240. The tug Barranca rendered that service. When the captain of the Minnesota stated to the master of the Ionian that he wanted to be towed into South Pass, the latter stated that he could not do that, as after dark pilots could not take anything in on a hawser.

[1, 2] We are of opinion that both the tugs rendered salvage services. The Minnesota was helpless at sea, and was in some danger at each of the places from which she was towed, though the danger was not imminent. Apparently the Ionian rendered all the service that was expected of it by the master of the Minnesota. The vessel was towed to a safer anchorage, where its mas-

ter conveniently could make his own arrangements for the towing of it to New Orleans. The service of the two tugs was practically continuous. That service was kept from being a mere towage service by the fact that the Minnesota was disabled, and what was done in its behalf was the means of enabling it to escape from a present or prospective danger. 35 Cyc. 724. Considerably less than double the ordinary contract towage rate was awarded for the service rendered by the Ionian. That award cannot properly be regarded as excessive. Magnolia Petroleum Co. v. National Oil Transport Co. (C. C. A.) 286 F. 40. The amount awarded for the service rendered by the Barranca was on the basis of the ordinary towage rate which was agreed on. There is no tenable ground for complaining of the amount of that award.

The decree is affirmed.