# THE TRUXILLO.

(District Court. E. D. Louisiana.   November 30, 1925.)

No. 17479.

Salvage ⬤⇒13, 34—Towing of disabled vessel held a salvage service; compensation at double towage basis.

Service rendered by a steel screw vessel of 9,225 tons capacity, valued at $230,000, in towing for 40 miles a smaller vessel having disabled rudder, *held* a salvage service, which, on basis of double towage, was worth $200 an hour during actual towing, and $100 per hour for additional delay occasioned thereby, plus damage to Manila hawser.

In Admiralty. Libel by the United States, as owner of the steamship City of Weatherford, against the steamship Truxillo. Decree for libelant.

Edouard F. Henriques, Sp. Asst. U. S. Atty., of New Orleans, La.

Terriberry, Rice & Young, of New Orleans, La., for claimant.

BURNS, District Judge. The United States of America, as owner of the steamship City of Weatherford, claims salvage of the American Steamship Truxillo. The libel is on behalf of the owner, and also of the crew, of the City of Weatherford. The alleged salvage services consisted in the towing of the Truxillo from a point about 40 miles off South Pass, in the Gulf of Mexico, to the lightship of that pass at the mouth of the Mississippi river.

The evidence shows that the Truxillo had left the port of New Orleans January 15, 1924, bound for Miami, via Key West, Fla.; that outside of the passes she encountered a strong breeze and rough seas; that about 5:45 a. m., on January 16, about 65 miles out in the Gulf of Mexico, she lost her rudder; that a jury or temporary rudder was rigged, the same consisting of a heavy boom, to each end of which was fastened a line, and this, lowered over the stern, was used instead of a rudder; that a sail was also rigged on the after-deck to assist in the steering of the ship. Being so rigged, she headed back to South Pass; her engines working in good condition. She managed to make about 25 miles, although she varied considerably from her course.

The City of Weatherford, bound for New Orleans, sighted the distressed vessel, which displayed a flag signal and had blown several whistle signals; the escaping steam of which was visible. When the City of Weatherford came abreast of the Truxillo,

the flag signal displayed proved to be code letters "X. Y. K.," meaning, "Can you or will you take me in tow?" By megaphone, the master of the City of Weatherford agreed with the master of the Truxillo to tow him back to South Pass. No compensation was discussed. A small boat was lowered, with four men, who connected an eight-inch manilla hawser, which was used by the City of Weatherford for the tow.

During the towing there was a gentle to moderate breeze, with quite a heavy swell running and occasional light rains. At 1 p. m. the manila line parted at or near the capstan aboard the Truxillo. The vessels were stopped, and the City of Weatherford passed a steel hawser to the Truxillo, which was shackled to one of the latter's anchor chains to allow sufficient spring. The towing then continued until about 8:25 p. m., when the Truxillo was safely anchored at a point near the South Pass, off the lightship.

The total time involved in the towing approximated 10½ hours. Libelants claim there was further time lost by the City of Weatherford, which otherwise would have been able to navigate the pass and the river during daylight hours, instead of at night and in fogs then encountered, and also subsequent loss of time at the wharf in the port of New Orleans should be included in estimating time loss because, if she had been berthed as due, during the night, the stevedores would have begun discharging her that morning, whereas, by berthing about noon, they had proceeded to other ships and did not begin discharging the City of Weatherford until the morning of the 18th. This would involve allowing some 24 hours as time lost, due to the salving operation. The evidence tends, however, to show that all of this time cannot properly be charged to the salvage services rendered; that a fair estimate of the whole time attributable to the operation and consequent delays would be 16½ hours, a 10½ hours actual towing and 6 hours of delay caused thereby.

The claimant contends, under the authority of the decision of the Circuit Court of Appeals for this Circuit (Fifth), in the cases of the Catalina, 105 F. 633, 44 C. C. A. 638, The New Camelia, 105 F. 637, 44 C. C. A. 642, United States v. Lester Alexander (C. C. A.) 5 F.(2d) 230, and Magnolia Petroleum Co. v. National Oil Transport Co. (C. C. A.) 286 F. 40-43, the rule of double towage only should apply. On the other hand, the libelant claims that the facts in this case do not justify the application of that rule, since the Truxillo, her cargo, and

passengers were in danger because of the threatening condition of the weather and the unseaworthiness of the ship.

Upon the whole case I am of the opinion that the services rendered were salvage services, though of a rather low order, and that the case to a large extent should be ruled by the decision of the Circuit Court of Appeals in the Catalina, above cited, taking into consideration, however, the fact that the condition as to values is reversed in this case. The Catalina was a large Spanish steamship, valued at $200,000, and, because of the breaking of a propeller shaft 60 miles from the mouth of the Mississippi river, she was towed in by the Olympia, a vessel worth $75,000, the tow value of which was estimated at $50 per hour. In this case the value of the Truxillo was only $6,752, which, plus her cargo and collect freight at risk, made a total of $59,000, was towed by the City of Weatherford, a steel screw vessel having a dead weight carrying capacity of 9,225 tons, valued at $230,000.

Testimony in the record on behalf of claimant is to the effect that the charter value of the City of Weatherford in the regular trade for which she was designed was $1.25 per dead weight ton per month, or $357.12 per day, which, plus fuel and water, would come up to $602.07 per day of 24 hours, or approximately $25 per hour. This rate, however, cannot be fairly applied to a ship of the character and value of the City of Weatherford, since this price would just about pay for the hire of an ordinary harbor tug in port in the usual course of its work under contract. The City of Weatherford was of the turbine type, and there was some danger that the snapping of lines might result in serious damage, should they be caught in her wheel, maneuvering, as she was, under the conditions that obtained during this towage in the open sea. So, too, under the conditions that obtained, there was some danger to which the members of the crew were exposed in the handling of the lines.

Under all the circumstances it is believed that upon a towage basis the City of Weatherford was worth $100 per hour, and double this to accent and reward the same as salvage services under the rule applied in The Catalina. The award will, accordingly, be made upon a basis of $200 per hour and $100 per hour for the delay thereafter, paying for the services actually rendered, and making it sufficiently large to carry into effect the principle involved in salvage compensation.

The total award will therefore be fixed

at $2,700, plus $140 for the damage or depreciation of the manila hawser pursuant to a stipulation of record; one-fourth of the said award, or the sum of $625, to be distributed to the regular crew of the City of Weatherford as of that date in proportion to their wages.

A decree may be drawn accordingly in favor of the libelant and the crew. Costs to follow decree.