## CRESCENT TOWING & SALVAGE CO., Inc. v. THE MV 117 et al.

### THE PORT HUDSON.

#### No. 1230.

United States District Court
E. D. Louisiana, New Orleans Division.

Dec. 13, 1949.

Terriberry, Young, Reault & Carroll, New Orleans, La., for libellant.

Lemle, Moreno & Lemle, New Orleans, La., for claimant.

WRIGHT, District Judge.

This is a libel in rem for salvage brought by Crescent Towing & Salvage Company, Inc., as owner of the Tug Port Hudson on behalf of itself and her crew members against the Barge MV 117. Mississippi Valley Barge Line Company is the claimant and owner.

The Tug Port Hudson is a 1000 horsepower Diesel engine single screw tugboat of steel construction. She is 91 feet in length, 25 feet abeam and 11 feet, 6 inches in depth. On February 18, 1946, libellant purchased the Port Hudson from the United States Maritime Commission for $140,000.00. She is carried on the books of libellant at a value of $134,608.15. At the relevant times she was manned by a crew of six including the master.

The Barge MV 117 is of steel construction including the elevated cargo house. The barge is 132 feet in length, 35 feet abeam and has a hull depth of 10 feet. She was laden with a full volume load of cargo and had a freeboard of 3 feet. The actual weight of her cargo was 6,445 pounds, 277 pounds which on June 5-6, 1946, consisted of soap, soap powder, battery chargers, glass jars, automotive parts, toys, steel bars, stoves, automotive wire, and wiring sets, kalsomine, putty paint and glassware. Her cargo doors were sealed with Interstate Commerce Commission Seals. On the top of the cargo house were stowed eighty bundles of steel bars weighing 85,960 pounds.

On the night of June 5, 1946, the Mississippi River at the Port of New Orleans was in flood stage, the reading on the Car-

rollton gauge was about 18 feet on a stand, and the downriver current was approximately six miles per hour. The Port Hudson was moored at her berth at the Louisa Street Wharf. At 11:35 P.M. on June 5, 1946, the Barge MV 117 was seen drifting free downriver approximately 600 feet from the east bank. The barge had come loose from her moorings at the Mandeville Street Wharf, located about 2000 feet upstream from the Louisa Street Wharf. The Port Hudson immediately started up her engines and at 11:40 was away from the dock and proceeding downriver making about eleven miles per hour over the ground in pursuit of the barge. In a short time the Port Hudson approached the barge on the tug's port hand and took her in tow. The tug then turned around and returned to Louisa Street Wharf, contacted Mississippi Valley Barge Line Company on the telephone and was told to return the barge to Mandeville Street. This was done. The barge had a mooring line hanging over her stern. At Mandeville Street the other part of the line was found secured to the bitt on the wharf. The Port Hudson made the barge fast with her lines. She returned to her berth at 12:45 A.M. on June 6th, after an elapsed time of about on hour.

The MV 117 had been picked up off the Pauline Street Wharf, some 5000 feet below Mandeville Street Wharf. Just below Pauline Street Wharf was located the Army Base Wharf at Poland Street at which there were several small tugs and a dry dock. Downriver and across on the east bank was the main yard of Todd-Johnson Dry Dock, Inc., where there were several vessels located. Below this began a series of vessels anchored in the river proper.

Claimant admits that the facts here make out a case of salvage, but argues that it is salvage of a low order to be compensated for at double the towage rate plus time lost, or a total award of $42.50. Libellant, on the other hand, while conceding that this may be salvage of a low order, submits that it is not so low as not to justify an award in excess of the amount offered by claimant.

It is true, as claimant contends, there is a line of jurisprudence laid down by the United States Court of Appeals for the Fifth Circuit which would indicate that the award in low order salvage cases should be limited to double the towage rate. The Catalina, 1900, 105 F. 633; The New Camelia, 1900, 105 F. 637; Magnolia Petroleum Co. et al. v. National Oil Transport Co., 1923, 286 F. 40. These are relatively old cases, however, and it is doubtful, in view of Cooley et al. v. Standard Oil Co. of Louisiana, 23 F.2d 841, 1928 A.M.C. 586, that the court is presently of the view that awards in such cases should be so limited. See also Egbert H., 131 F.2d 111, 1942 A.M.C. 1478.

The Supreme Court in the early case of The Blackwell, 1869, 10 Wall. 1, 19 L.Ed. 870, outlined the factors to be considered in determining a salvage award and that case has been consistently cited as authority in subsequent cases of salvage. In that case the Supreme Court, 10 Wall. at page 13, 19 L.Ed. 870, stated: "* * * Courts of admiralty usually considered the following circumstances as the main ingredients in determining the amount of the reward to be decreed for a salvage service: (1.) The labor expended by the salvors in rendering the salvage service. (2.) The promptitude, skill, and energy displayed in rendering the service and saving the property. (3.) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed. (4.) The risk incurred by the salvors in securing the property from the impending peril. (5.) The value of the property saved. (6.) The degree of danger from which the property was rescued."

The underlying theory of salvage is based on the encouragement of voluntary exertions for the saving of imperiled ships and cargoes, and the amount of the bounty for salvage depends on many factors well known, but not subject to precise measurement. Joncich v. Xitco (The Pioneer) 9 Cir., 172 F.2d 1003, 1949 A.M.C. 1854. In the present case, an award of $42.50 to the owner and crew of six of the Port Hudson would hardly serve as an inducement to

others voluntarily to exert themselves in behalf of a vessel adrift, unknown to her owners or their agents, in the current of a river in danger of damaging not only herself and her cargo, but other vessels and installations with which she might come in contact.

 Applying the law as laid down in the cases cited to the facts in the instant case, it is the opinion of the court that the salvage award herein should be $500.

It is so ordered.