05-1424-cr
United States v. Wallace

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued: April 22, 2008                Decided: July 8, 2008)

Docket No. 05-1424-cr

- - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

                Appellee,

        - v.-

RICKY P. WALLACE,

                Defendant-Appellant.

- - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, Chief Judge, KEARSE and KATZMANN,
               Circuit Judges.

Appeal from a judgment of conviction entered in the

United States District Court for the Western District of New

York (Siragusa, J.).  The defendant argues that sharing

narcotics does not constitute drug distribution within the

meaning of 21 U.S.C. § 841(a), and that his conviction

therefore rests on insufficient evidence.  We affirm the

conviction; however, the case is remanded in accordance with

United States v. Regalado, 518 F.3d 143 (2d Cir. 2008).

BRUCE R. BRYAN, Syracuse, NY, for Appellant.

BRETT A. HARVEY, Assistant United States Attorney (Terrance P. Flynn, United States Attorney for the Western District of New York, on the brief), United States Attorney's Office for the Western District of New York, Rochester, NY, for Appellee.

DENNIS JACOBS, Chief Judge:

Ricky P. Wallace appeals the judgment of conviction entered against him on drug and gun offenses following a jury trial in the United States District Court for the Western District of New York (Siragusa, J.). Wallace argues chiefly that his sharing of narcotics on a social basis does not constitute drug distribution for purposes of 21 U.S.C. § 841(a). We affirm Wallace's conviction for the reasons stated in this opinion and in a separate summary order issued today; but we remand to the district court for reconsideration of Wallace's sentence pursuant to United States v. Regalado, 518 F.3d 143 (2d Cir. 2008).

## BACKGROUND

In May, 2003, a confidential informant made two controlled purchases of cocaine base at an apartment in

Rochester, New York. Each time, the seller took the cash, went into a bedroom, and came back with one or two small ziplock bags containing cocaine base. A week later, Rochester police executed a search warrant at the apartment, in which Wallace lived with his father. During the search, Wallace advised the officers that he lived in the apartment, that he was unemployed, and that he had a shotgun in his bedroom. From his bedroom, the police recovered ziplock bags containing a total of 1.5 grams of cocaine base, a quantity of new unused ziplock bags, 91.22 grams of marijuana, an AK-47 semi-automatic assault weapon and ammunition compatible with it, and $460 in cash.

After his arrest, Wallace waived his <u>Miranda</u> rights and made several statements to the police: that he had cocaine base and marijuana to use and share with his friends, but was not a drug dealer; that he used the ziplock bags to store the drugs for his own use; that he kept the AK-47 to protect himself and his bed-ridden father; and that he knew the weapon was illegal, but made sure to keep it unloaded. These statements were admitted at trial.[1]

---

[1] No evidence of the confidential informant's controlled purchases was admitted at trial.

Wallace testified to the following at trial.  He was unemployed; however, his father received disability and Social Security checks, which Wallace (who had power of attorney) would cash to pay the monthly $400 rent and utilities for the apartment.  The narcotics and ziplock bags belonged to him, while the gun belonged to his father.  He purchased $50 worth of cocaine base every month or so.  He had purchased about $600 worth of marijuana two or three years earlier, the remains of which were seized by the police.  He had the drugs for his personal use and, on occasion, to share with friends.  He purchased ziplock bags in bulk.  It was his practice to break the cocaine base into smaller pieces and place them in the ziplock bags so that his visitors would not know how much he had and try to "use it all up."  Tr. 433.  Wallace's girlfriend and his father got the AK-47 from "a boss" and brought it to the apartment.  Tr. 437.  To prevent it from hurting anyone, he "put it up for safety," keeping it under his mattress and putting the ammunition in an empty baby wipes container.  Id.

On April 9, 2004, the jury convicted Wallace of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), possession

4

of a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and possession of marijuana, in violation of 21 U.S.C. § 844(a).

**DISCUSSION**

Wallace argues that the evidence was insufficient to support his conviction for possession with the intent to distribute cocaine because the government failed to prove that he held (or shared) drugs with a commercial purpose. A defendant challenging the sufficiency of the evidence "bears a heavy burden." United States v. Griffith, 284 F.3d 338, 348 (2d Cir. 2002). "Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, but if the evidence, thus construed, suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt," the conviction must stand. United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir. 1995) (internal citations omitted).

On the same legal theory, Wallace challenges the district court's supplemental jury instruction that "[s]haring drugs with another constitutes distribution."

5

"[W]e will not find reversible error unless a charge either failed to inform the jury adequately of the law or misled the jury as to the correct legal rule." United States v. Alfisi, 308 F.3d 144, 148 (2d Cir. 2002).

                                    I

This Circuit has not yet decided whether the social sharing of a small quantity of drugs, without consideration, constitutes the distribution of drugs within the meaning of 21 U.S.C. § 841(a). See United States v. Williams, 247 F.3d 353, 358 n.6 (2d Cir. 2001) ("Drugs intended for personal use are not for distribution. It may be, however, that drugs held to be shared gratis with family and friends, though not for personal use, are also not for 'distribution,' pursuant to 21 U.S.C. § 841. On this point, we take no position whatsoever.").

Several of our sister circuits, however, have concluded that distribution within the meaning of 21 U.S.C. § 841(a) can take place without a sale. See, e.g., United States v. Cormier, 468 F.3d 63, 70 n.3 (1st Cir. 2006) ("It is well accepted that drugs may be distributed by giving them away for free; 21 U.S.C. § 841(a)(1) imposes no requirement that

a sale take place."); United States v. Fregoso, 60 F.3d 1314, 1325 (8th Cir. 1995) ("No 'sale' is required to violate the statute."); United States v. Vincent, 20 F.3d 229, 233 (6th Cir. 1994) ("In order to establish the knowing or intentional distribution of a controlled substance, the government needed only to show that defendant knowingly or intentionally delivered a controlled substance.  It was irrelevant for the government to also show that defendant was paid for the delivery." (internal citation omitted)); United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994) (holding that the defendant's "intent to share the cocaine with others is sufficient for a court to find that he possessed drugs with intent to distribute"); United States Ramirez, 608 F.2d 1261, 1264 (9th Cir. 1979) ("[T]here is direct evidence that appellant engaged in the 'distribution' of cocaine; although apparently no commercial scheme is involved, his sharing the cocaine . . . constitutes 'distribution' for purposes of 21 U.S.C. § 841(a)(1).").

We now join this sound majority and hold that the sharing of drugs, without a sale, constitutes distribution for purposes of 21 U.S.C. § 841(a), which makes it illegal

to "possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). The word "distribute" means "to deliver," id. § 802(11); and "deliver" means "the actual, constructive, or attempted transfer of a controlled substance," id. § 802(8). These definitions, which take no account of consideration, bespeak a congressional intent "to proscribe a range of conduct broader than the mere sale of narcotics." Washington, 41 F.3d at 919.

This reading respects the line between "possession" and "distribution." Simple possession, in violation of 21 U.S.C. § 844, refers to "possession for one's own use," United States v. Dovalina, 525 F.2d 952, 958 (5th Cir. 1976) (internal quotation marks and citation omitted), whereas distribution, in violation of 21 U.S.C. § 841(a), "can only be ultimately accomplished by 'delivery' to a distributee," United States v. Binkley, 903 F.2d 1130, 1138 (7th Cir. 1990). Thus a defendant who holds narcotics solely for personal use is in possession; one who delivers or transfers narcotics to another--for consideration or gratis--is distributing.

Wallace testified that he purchased cocaine base and

marijuana for his own personal use, and also shared the drugs with friends. See Tr. 432 ("Most of the time I used it by myself . . . but if a lady friend come by we use it together, you know, have some and relax . . . ."). This testimony is direct evidence that Wallace engaged in the distribution of cocaine base.

Accordingly, we reject Wallace's sufficiency challenge. We likewise reject his challenge to the supplemental jury charge that "[s]haring drugs with another constitutes distribution"--the charge is sound.

**II**

Wallace relies chiefly on Lopez v. Gonzales, 549 U.S. 47, 127 S. Ct. 625 (2006), to support the idea that proof of commercial dealing is required for a conviction under 21 U.S.C. § 841(a). Lopez addressed a provision of the Immigration and Nationality Act ("INA") providing for the deportation of "aggravated felon[s]." Included in the definition of "aggravated felony" is the "'illicit trafficking in a controlled substance . . . including a drug trafficking crime.'" Lopez, 127 S. Ct. at 627-28 (quoting 8 U.S.C. § 1101(a)(43)(B)). The INA defines a "drug

trafficking crime" as "'any felony punishable under the Controlled Substances Act.'" Lopez, 127 S. Ct. at 628 (quoting 18 U.S.C. § 924(c)(2)). The petitioner's offense was helping another possess narcotics, which is "punishable under the Controlled Substances Act" as a misdemeanor, but as a felony under state law. See id. at 629. The question presented was whether such an offense was a "drug trafficking crime."

The government in Lopez argued that the INA "requires only that the offense be punishable, not that it be punishable as a federal felony," a position that the Court considered "incoheren[t] with any commonsense conception of 'illicit trafficking.'" Lopez, 127 S. Ct. at 629. The Court looked to the "everyday understanding of 'trafficking,'" noted that "[c]ommerce . . . was no part" of the offense (helping another possess narcotics), and decided that that militated against the government's interpretation of the INA: to read the INA as the government did "would often turn simple possession into trafficking, just what the English language tells us not to expect." Id. at 630.

Lopez is distinguishable on several levels. First, Lopez consulted the "everyday understanding of

'trafficking'" because there, "the statutes in play do not define the term, and so remit us to regular usage to see what Congress probably meant." Id. But Title 21 does define terms; and the definitions (as discussed supra) describe distribution without regard to sale or traffic. Second, Lopez interpreted another statute, the aggravated felony provision of the INA; that statute uses the phrase "illicit trafficking"; the word "traffic" means commerce and trade; and no form of that word is used in the statute that proscribes Wallace's offense. See 21 U.S.C. § 841(a) (making it illegal to "possess with intent to manufacture, distribute, or dispense, a controlled substance").

Wallace further contends that United States v. Swiderski, 548 F.2d 445 (2d Cir. 1977), indicates that a felony drug offense must be commercial in nature. Swiderski held that "where two individuals simultaneously and jointly acquire possession of a drug for their own use, intending only to share it together, their only crime is personal drug abuse--simple joint possession, without any intent to distribute the drug further." Id. at 450. Since neither one of the joint possessors "serves as a link in the chain of distribution," we concluded that "simple joint possession

11

does not pose any of the evils which Congress sought to deter and punish through the more severe penalties provided for those engaged in a 'continuing criminal enterprise' or in drug distribution." Id.

Wallace never testified that he shared his drugs with anyone as "joint possessors" within the meaning of Swiderski. The rule announced in Swiderski is expressly limited "to the passing of a drug between joint possessors who simultaneously acquired possession at the outset for their own use." Id. at 450-51. We advised that the rule would not apply where the evidence showed that the defendant "handed over a small amount of marijuana . . . for smoking purposes" to another individual without proof that the other individual "had jointly and simultaneously acquired possession of the drug at the outset." Id. at 450 (citing United States v. Branch, 483 F.2d 955 (9th Cir. 1973)). Rather, since "sole possession" in such a case would rest with the defendant, "his transfer of the drug to a third person, friend or not," would violate the prohibition on drug distribution. Swiderski, 548 F.2d at 450. Wallace had "sole possession" of the drugs, even if he "handed over a small amount" to his occasional visitor. Id.

12

Nor can Wallace find refuge in cases in which convictions under 21 U.S.C. § 841(a) were reversed for want of evidence that the possession of narcotics was with the intent to distribute. In <u>United States v. Boissoneault</u>, 926 F.2d 230 (2d Cir. 1991), we reversed a conviction on sufficiency grounds where "the quantity of cocaine at issue, 5.31 grams (.19 oz.), was not inconsistent with personal use." <u>Id.</u> at 234. But in that case, and other similar cases, it mattered that defendant had none of the tools of the trade. Thus there was no proof that Boissoneault had "scales, beepers, and other devices," or the "materials needed to process cocaine or to package it in druggist folds," or "a gun or other weapon, which would have helped sustain an inference that he was engaged in the dangerous business of drug trafficking." <u>Id.</u>

This is not the <u>Boissoneault</u> case. When the Rochester police searched Wallace's bedroom, they found (among other things) 1.5 grams of cocaine base parceled out in more than a dozen small ziplock bags; a dinner plate holding numerous new and unused small ziplock bags; a ziplock bag containing numerous new and unused small ziplock bags bearing green dollar signs; a dresser drawer full of empty and unused

13

glassine ziplock bags; and a semi-automatic assault weapon and ammunition for it. Viewed in the light most favorable to the government, this evidence supports the inference that Wallace had the intent to distribute narcotics. See United States v. Gamble, 388 F.3d 74, 77 (2d Cir. 2004) (affirming finding of intent to distribute where "[l]aw enforcement officers found 1.7 grams of cocaine base (with a purity of 79 percent), packaged in twenty-six zip-lock bags, . . . along with hundreds of empty zip-lock bags," and evidence showed "an unusually high volume of pedestrian traffic at [the defendant's] apartment in the weeks preceding the search"); United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995) ("[P]articularly in light of [the defendant's] admission that he was not a user, his physical possession of a scale, cut, and a loaded firearm supported the jury's rejection of his personal-use defense."); United States v. White, 969 F.2d 681, 684 (8th Cir. 1992) ("Because a gun is generally considered a tool of the trade for drug dealers, [it] is also evidence of intent to distribute." (internal citation and punctuation omitted)); United States v. Garrett, 903 F.2d 1105, 1113 (7th Cir. 1990) ("Intent to distribute has been inferred in cases where small amounts of

drugs have been packaged in a manner consistent with distribution or have been possessed in conjunction with other indicia of drug distribution, such as a weapon." (footnote omitted)).

Also seized was $460 in cash. Wallace testified that he was unemployed, and that he relied on his father's disability checks to pay the $400 monthly rent, the utility bills and medical expenses. These facts made it permissible to infer that Wallace lacked any legitimate income to purchase the cocaine base for his personal use and for sharing with friends.

**III**

In a letter to the panel pursuant to Federal Rule of Appellate Procedure 28(j), Wallace argues that remand to the district court is warranted in light of the Supreme Court's decision in Kimbrough v. United States, 128 S. Ct. 558 (2007). We agree.

Because Wallace did not challenge this aspect of sentencing below, we review the district court's decision for plain error. United States v. Regalado, 518 F.3d 143, 147 (2d Cir. 2008). We cannot be certain from the record

15

whether the district court would have imposed a lower sentence "had it been aware that 'the cocaine Guidelines, like all other Guidelines, are advisory only,' and that it therefore had discretion to deviate from the Guidelines where necessary to serve the objectives of sentencing under 18 U.S.C. § 3553(a)." Id. at 145 (quoting Kimbrough, 128 S. Ct. at 564, 575). The proper course is therefore to remand to give the district court "an opportunity to indicate whether it would have imposed a non-Guidelines sentence knowing that it had discretion to deviate from the Guidelines to serve those objectives." Regalado, 518 F.3d at 149.

**CONCLUSION**

For the reasons stated in this opinion (and the accompanying summary order), the judgment is AFFIRMED as to the conviction and the case is REMANDED to the district court for consideration of resentencing.

16