NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 7, 2010
Decided August 12, 2010

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-3156

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee,* <br><br> *v.* <br><br> JESUS GUTIERREZ, <br> *Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 07 CR 516-3 <br><br> Ruben Castillo, <br> *Judge.* |

**O R D E R**

Jesus Gutierrez followed his brother's instructions to keep watch over a package of heroin stored in the family's kitchen cupboard, and when he suspected the police were closing in, he handed off the package to a friend with instructions to "get rid of it." A jury convicted Gutierrez of distributing heroin, and the district court sentenced him to the statutory minimum of five years' imprisonment. *See* 21 U.S.C. § 841(a), (b)(1)(B)(i). On appeal Gutierrez challenges the sufficiency of the evidence to support the verdict. We affirm the conviction.

## I. Background

The backdrop to Jesus Gutierrez's arrest began a few hours earlier at a Mexican restaurant on Chicago's Western Avenue, where DEA agents watched a confidential

informant ("CI") buy heroin from a dealer named Alma Delgado. Delgado's only connection to Jesus is that she got her supply from his brother, Adrian Guiterrez. On this particular day, Adrian met Delgado outside the restaurant with a sample of heroin, which she brought inside and traded the CI for cash. When Adrian drove away, agents followed him to a nearby house (2818 West Wellington Avenue) and watched him go inside.

A few hours later, the CI called Delgado to arrange a 250-gram heroin purchase for $16,500. The two met at a gas station, but when the CI told Delgado he did not have the money with him, she called off the deal and drove to the same home agents had followed Adrian to earlier that day. Adrian came out, and he and Delgado drove away but were arrested a few minutes later after a traffic stop.

Jesus Gutierrez enters the story here. A few minutes after his brother left the house with Delgado, Jesus—who lived there with his mother, wife, and children—left too with a third man, Oscar Bernal. A local law enforcement officer, working undercover surveillance for the Drug Enforcement Administration that day, was positioned so that he could observe Jesus and Oscar's departure. As they walked up the block, a neighborhood boy told Jesus that his brother had just been arrested. Jesus and Bernal—apparently unaware that they were under surveillance—walked briskly back to enter the house at 2818 West Wellington. Bernal emerged again a few minutes later, holding his left hand over a left front pocket of his clothing, unlocked a car parked across the street, and placed a package from his left pocket under the car's passenger seat. When the undercover officer approached and identified himself, Bernal denied knowing who owned the car but gave permission to search it. Inside the package Bernal had placed under the seat was roughly 493 grams of heroin wrapped in plastic. Bernal and Jesus, who had since come outside apparently to watch the situation with Bernal develop, were both arrested.

After *Miranda* warnings, Jesus gave the following written statement:

On August 9, 2007, I was sitting on a sofa in our living room at our residence . . . . My brother Adrian Gutierrez entered the residence from outside and walked over towards the cabinet in the kitchen. Adrian stood in front of the cabinet and took out a package wrapped in plastic from somewhere on his body. Adrian placed the package on the top shelf of the cabinet. I thought the package was cocaine when I first observed it. Adrian looked at me and said make sure no one touches my stuff and I will be back later. A short time later I left the residence with Oscar and met up with a friend Mario.

As I was standing outside of my house on the street, a young boy from the neighborhood on a bicycle said that my brother who drives the black car was

just stopped by the police on the other block and was handcuffed. I walked in the house with Oscar to tell my mother that Adrian was arrested. My mother ran out of the rear door of the residence toward California and Nelson.

I went to the place in the kitchen where Adrian put the package at. I took the package from the cabinet in the kitchen and gave it to Oscar. I told Oscar take the package and get rid of it. Oscar grabbed the package and went outside to a vehicle.

I exited the house and was stopped by the police.

The government's evidence at trial was brief. Delgado testified but covered only the events leading up to her own arrest; when asked if she knew Jesus, she said only that she had met him before and knew that he was Adrian's brother but that he had not been present during any of that day's drug transactions. Bernal did not testify—he had pleaded guilty to being an accessory after the fact to Adrian Gutierrez's possession with intent to distribute heroin and disappeared after serving his sentence and commencing his term of supervised release. There were no identifiable fingerprints on the package of heroin, and the only direct testimony about the events that transpired in Jesus's kitchen came from the DEA agent who arrested and interviewed him. The jury found Jesus guilty of distributing heroin, and the district court denied his motion for judgment of acquittal or a new trial.

## II. Discussion

On appeal, Jesus Gutierrez argues that the government's case was too flimsy to permit the verdict to stand. In challenging the sufficiency of the evidence, Gutierrez faces a "nearly insurmountable hurdle": He can succeed only if, after viewing the evidence in the light most favorable to the prosecution, we conclude that no rational jury could have found him guilty beyond a reasonable doubt. *United States v. Moore*, 572 F.3d 334, 337 (7th Cir. 2009) (quotation marks and citation omitted). A guilty verdict is also supported by all reasonable inferences that the jury could have drawn from the evidence admitted at trial. *United States v. Blanchard*, 542 F.3d 1133, 1154 (7th Cir. 2008); *United States v. Useni*, 516 F.3d 634, 646 (7th Cir. 2008).

To prove that Gutierrez was guilty of distributing heroin, the government had to show that he distributed the drug to a third party, that he did so knowingly and intentionally, and that he knew he was distributing a controlled substance.[1] *See United*

---

[1] Although Gutierrez told the police that he believed the package contained cocaine,

(continued...)

*States v. Mendoza*, 510 F.3d 749, 752 (7th Cir. 2007). The federal criminal code defines "distribute" as "deliver," and delivery in this context means "the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(11), (8); *United States v. Tingle*, 183 F.3d 719, 727 n.3 (7th Cir. 1999). Here, the jury was instructed that "distribution" is the "transfer or attempted transfer of possession from one person to another" and that possession is the "ability to exert control over" an object.

Gutierrez argues that there was insufficient evidence to support his conviction because the government did not prove beyond a reasonable doubt that he ever possessed the heroin. Because a defendant who aids distribution—by, for example, arranging the delivery or picking up the payment—is guilty of the crime as if he were a principal, *see* 18 U.S.C. § 2, proof that the defendant himself possessed the contraband is not necessary for a distribution conviction, *see United States v. Colon*, 268 F.3d 367, 376-77 (6th Cir. 2001) (collecting cases). The government's theory in this case, however, was that Gutierrez did in fact possess, and transferred to Bernal possession of, the heroin. Although the evidence to support that theory was not overwhelming, we conclude that it was sufficient to permit the jury to convict Gutierrez of distribution.

Possession can be actual or constructive. *United States v. Irby*, 558 F.3d 651, 654 (7th Cir. 2009). Constructive possession requires more than mere proximity to drugs, presence on the property where the drugs are located, or association with the person who controls the drugs. *Id.* Rather, the government must establish a nexus between the defendant and the contraband by proving that he had "the recognized authority in his criminal milieu" to "determine the disposition" or "guide the destiny of the drug." *United States v. Campbell*, 534 F.3d 599, 605-06 (7th Cir. 2008) (internal quotation marks and citations omitted).

Gutierrez's physical contact with the package of heroin was fleeting—the evidence before the jury was that he touched it only when handing it over to Bernal—but the brevity of his actual control over the package is irrelevant because the government established the requisite nexus between Gutierrez and the heroin necessary to demonstrate constructive possession. By Gutierrez's own admission, he was sitting on the couch when Adrian came inside, stashed a package in the cupboard, and said, "[M]ake sure no one touches my stuff." Gutierrez could have refused his brother's command or otherwise attempted to disassociate himself from the package—which he knew contained drugs—but there is no evidence that

---

[1](...continued)
the third element is not in dispute because a conviction under 21 U.S.C. § 841(a) requires only that the defendant knew he distributed a controlled substance; he need not have been correct about the drug's identity. *United States v. Barlow*, 310 F.3d 1007, 1012 (7th Cir. 2002).

he did.  Indeed, when he learned that his brother had been arrested, he rushed back to the house (which implied that he thought that the police might be on their way) to do precisely what his brother had requested.  From this evidence it was reasonable for the jury to infer that Gutierrez's brother intended to give him authority, at least temporarily, to control the fate of the heroin and that Gutierrez accepted the task.  *Cf. United States v. Kitchen*, 57 F.3d 516, 524-25 (7th Cir. 1995) (explaining that momentary handling of drug without assent to take dominion of it does not establish possession); *United States v. Ortega*, 44 F.3d 505, 507 (7th Cir. 1995) (concluding that defendant who was left alone in van with friend's heroin but not given any authority over it was not in possession because "the power to make off with someone else's property is not equivalent to a *right* to the property").

That leaves the question whether there was sufficient evidence that Jesus Gutierrez transferred possession of the heroin to Bernal.  Again, the only evidence on this point is Gutierrez's own admission that he handed the package over to Bernal with instructions to "get rid of it."  On appeal, Gutierrez suggests that his brother and Bernal were actually partners—and co-owners of the valuable package—and that when Jesus told Bernal to get rid of the package, his words were simply a plea to remove the drugs from the house to protect his family from the fallout of Adrian's criminal activity.  The jury, however, was not privy to any evidence suggesting that Bernal had a previous ownership interest in the package, and it was reasonable for them to infer that the directive to "get rid of" the drugs signified a transfer of possession.  To establish distribution, the government needed to prove only that the heroin traded hands—the crime does not require a financial transaction or that the distributor had any particular intent about the fate of the drugs once the exchange was complete.  *See United States v. Wallace*, 532 F.3d 126, 129 (2d Cir. 2008) (collecting cases for proposition that distribution can be gratuitous); *Tingle*, 183 F.3d at 727 n.3 (explaining that distribution is interpreted broadly); *United States v. Catchings*, 922 F.2d 777, 780 (11th Cir. 1991) (affirming distribution conviction of defendant who received powder cocaine from codefendant, transformed it into crack, and transferred it back to codefendant).  Although there was little evidence to shed light on what Gutierrez meant when he told Bernal to "get rid of" the heroin, the evidence that he handed it over, and that Bernal accepted it, along with reasonable inferences that could be drawn from those facts, was sufficient to prove that distribution was complete.

Accordingly, we AFFIRM Gutierrez's conviction.