UNITED STATES of America, Plaintiff–Appellee,

v.

Peter J. BOISSONEAULT, Defendant–Appellant.

No. 307, Docket 90–1324.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1990.

Decided Feb. 26, 1991.

Peter F. Langrock, Middlebury, Vt. (Langrock Sperry Parker & Wool, of counsel), for defendant-appellant.

Melissa A.D. Ranaldo, Asst. U.S. Atty., D. Vt., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., David V. Kirby, Chief, Crim. Div., of counsel), for plaintiff-appellee.

Before OAKES, Chief Judge, CARDAMONE, Circuit Judge, and SPRIZZO, District Judge.*

* The Honorable John E. Sprizzo, United States District Court for the Southern District of New York, sitting by designation.

OAKES, Chief Judge:

Peter J. Boissoneault appeals from a judgment of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, convicting him of knowingly and intentionally possessing cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C). Boissoneault challenges the district court's decision to admit, over objection, certain expert opinion testimony regarding the significance of properly admitted physical evidence. We need not resolve whether the contested testimony exceeded the permissible bounds of expert testimony under the Federal Rules of Evidence, however, because we find that Boissoneault's conviction rests on legally insufficient evidence.

## FACTS

On March 19, 1988, police officer Dean Marthers of the St. Albans City Police Department arrested Peter Boissoneault for driving under the influence of alcohol. At the police station, Officer Marthers searched Boissoneault and found on his person $1,460 in ten and twenty dollar bills, and four small packets, commonly called "druggist folds," containing differing amounts of cocaine totalling 1.99 grams. Boissoneault was then left alone in the processing room to telephone an attorney. When Officer Marthers returned to the room, he discovered a plastic bag directly beneath the chair in which Boissoneault had been sitting while speaking with his attorney. That bag contained another 3.32 grams of cocaine. A subsequent search of Boissoneault's wallet revealed $183, numerous business cards and slips of paper bearing names, addresses and telephone numbers, and a slip of paper (Government Exhibit 5) containing what appeared to be columns of initials and numbers. A search of Boissoneault's car turned up a handwritten poster bearing the words: "NOTICE: COKE DEALERS BEWARE. YOU SELL HERE YOU GO TO JAIL."

The case went to trial on July 6, 1989. The only contested issue was whether Boissoneault intended to distribute the 5.31 grams of cocaine he possessed at the time of his arrest. The Government introduced into evidence all the items seized from the defendant. In addition, the Government presented the testimony of five witnesses. Officer Marthers described for the jury the facts surrounding Boissoneault's arrest. Detective Osborne Glidden of the St. Albans Police Department and Detective Jeffrey Barbeau of the Burlington Police Department provided chain of custody testimony. Florence Wong, a chemist for the Drug Enforcement Administration ("DEA"), testified as to the quantity and purity of the cocaine in evidence.

For its last witness, the Government put on Special Agent James Sullivan, Jr., the head of the DEA office in Vermont. Agent Sullivan testified as an expert regarding the methods of drug dealers.[1] He described in general the characteristics of drug transactions, and contrasted the behavior of street level dealers of cocaine with the behavior of persons involved solely in the personal use of cocaine. He also testified as to the street price for various amounts of cocaine. More particularly, Agent Sullivan told the jury his opinions as to the significance of the physical evidence seized from the defendant. In the course of the Government's direct examination, over objections by defense counsel, Agent Sullivan was asked and answered the following questions:

> Q  Based on your experience in narcotics investigations, have you any—come to any conclusions as to what those numbers and initials on that piece of paper represent?
>
> A  Yes Ma'am.... To my mind that is a—an accounts receivable of what a person is owed by drug customers.
>
> .     .     .     .     .
>
> Q  Is this evidence which you've examined consistent with any particular type of drug dealer?

---

1. It was never disputed that Agent Sullivan, who had acted in an undercover capacity in over one thousand narcotics investigations over sixteen years, was qualified to testify as an expert.

A  To me, ma'am, everything in these packages and in the circumstances of this case suggest to me street level distribution of cocaine.

Later, during redirect examination and again over defense counsel's objections, the following exchanges took place:

Q  Based on the manner in which the cocaine was packaged in this case and based on the denominations of the money that's marked as Government's Exhibit 6A, do you have any belief as to whether or not or—as to what the source of that money is?

A  My belief, ma'am, is that the money would come from the street level distribution of cocaine.

.    .    .    .    .

Q  Aside from the tally sheet, is there any other evidence in this case that would lead you to believe that the sale of cocaine was—that the defendant was selling cocaine that night?

A  In my mind, ma'am, the totality of what we have in front of us ... [is] just totally consistent with what I have known for sixteen years as a classic street level distribution of small quantities of cocaine.

Following Agent Sullivan's testimony, the Government rested. The defense presented no evidence, and the jury convicted. On appeal, Boissoneault renews his challenges to the admissibility of the opinion testimony set out above.

## DISCUSSION

■  Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under this liberal rule, a qualified expert may generally suggest inferences that should be drawn from the facts, see Fed.R. Evid. 702, advisory committee's note, including inferences embracing the ultimate issue in the case, see Fed.R.Evid. 704(a). The district court may exclude ultimate issue testimony when (1) it is not "helpful" to the trier of fact, see Fed.R.Evid. 702, 704 advisory committee's note; (2) it pertains to a criminal defendant's mental state, see Fed.R.Evid. 704(b); or (3) it is unduly prejudicial, confusing, or time-consuming, see Fed.R.Evid. 403(a). A district court's decision to admit expert testimony will not be reversed unless it is "manifestly erroneous." See United States v. Roldan–Zapata, 916 F.2d 795, 805 (2d Cir.1990).

■  Based on these principles, we have repeatedly upheld the use of expert testimony by government agents to describe the characteristics and operating methods of narcotics dealers. See e.g., United States v. Campino, 890 F.2d 588, 593 (2d Cir.1989) (drug dealers' use of electronic surveillance equipment), cert. denied, —— U.S. ——, 111 S.Ct. 179, 112 L.Ed.2d 143 (1990); United States v. Diaz, 878 F.2d 608, 618 (2d Cir.) (characteristics of narcotics "stash pad"), cert. denied, —— U.S. ——, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989); United States v. Khan, 787 F.2d 28, 34 (2d Cir.1986) (operations and attire of Pakistani heroin dealers); United States v. Young, 745 F.2d 733, 761 (2d Cir.1984) (operations of heroin "mills"), cert. denied, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); United States v. Pugliese, 712 F.2d 1574, 1582 (2d Cir.1983) (quantity and purity of heroin used by addicts); United States v. Carson, 702 F.2d 351, 369 (2d Cir.) (clandestine manner in which drugs are bought and sold), cert. denied, 462 U.S. 1108, 103 S.Ct. 2456 & 2457, 77 L.Ed.2d 1335 (1983); United States v. Clark, 498 F.2d 535, 537 (2d Cir.1974) (street value of packaged heroin). In particular, we have held that experienced narcotics agents may explain the use and meaning of codes and jargon developed by drug dealers to camouflage their activities. See, e.g., United States v. Kusek, 844 F.2d 942, 949 (2d Cir.), cert. denied, 488 U.S. 860, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988); United States v. Nersesian, 824 F.2d 1294, 1308 (2d Cir.), cert. denied, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987); United States v. Gins-

berg, 758 F.2d 823, 830 (2d Cir.1985); *United States v. Cirillo,* 499 F.2d 872, 881 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974); *United States v. Borrone–Iglar,* 468 F.2d 419, 421 (2d Cir.), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1972). Agents may also offer their interpretations of any physical evidence that is properly before the jury. *See, e.g., Roldan–Zapata,* 916 F.2d at 805; *Campino,* 890 F.2d at 593; *Diaz,* 878 F.2d at 618. Finally, we have permitted experts to make conclusory statements, based on their experience, that the defendant was involved in illegal drug-related activity. *See, e.g., United States v. Brown,* 776 F.2d 397, 400–01 (2d Cir.1985) (testimony that defendant's observed role in drug transaction was that of a "steerer"), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986); *Young,* 745 F.2d at 760–61 (testimony that location frequented by defendants was a narcotics "shooting gallery" and that witnessed incident was a narcotics transaction); *Carson,* 702 F.2d at 369 (testimony that furtive activity appeared to be sales of narcotics); *see also United States v. Theodoropoulos,* 866 F.2d 587, 591–92 (3d Cir.1989) (testimony characterizing defendants' individual roles in the chain of drug distribution). *Cf. United States v. Torres,* 901 F.2d 205, 237 (2d Cir.) (suggesting that testimony that recorded telephone conversations indicated defendant's knowledge of and involvement with heroin conspiracy would probably have been admissible), *cert. denied,* — U.S. ——, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990).

■ Measured against these standards, we cannot characterize as "manifestly erroneous" the trial court's decision to admit Agent Sullivan's testimony that, in his opinion, one of the items seized from appellant was "an accounts receivable of what a person is owed by drug customers." This statement simply explained the likely significance of properly admitted physical evidence. We have already held precisely such testimony to be unobjectionable. *See Diaz,* 878 F.2d at 613, 618 (permitting testimony that ledger and index cards appeared to detail financial aspects of cocaine transactions).

More troublesome, however, are Agent Sullivan's three conclusory statements that the totality of the physical evidence in the case suggested "street level distribution of cocaine." We have repeatedly expressed our discomfort with expert testimony in narcotics cases that not only describes the significance of certain conduct or physical evidence in general, but also draws conclusions as to the significance of that conduct or evidence in the particular case. *See, e.g., Nersesian,* 824 F.2d at 1308; *Brown,* 776 F.2d at 401; *Young,* 745 F.2d at 765–66 (Newman, *J.,* concurring). *See generally* P. Bamberger, *The Dangerous Expert Witness,* 52 Brooklyn L.Rev. 855 (1986). In this case, the testimony was especially problematic because it did not meet the helpfulness criterion of Federal Rule of Evidence 702. *See United States v. Castillo,* 924 F.2d 1227, 1232–1233 (2d Cir.1991); *Theodoropoulos,* 866 F.2d at 591. Once Agent Sullivan had testified as to the likely drug transaction-related significance of each piece of physical evidence, the jury was competent to draw its own conclusion as to Boissoneault's involvement in the distribution of cocaine. Under Rule 702, a conclusion that the jury could just as easily have drawn for itself based on its own knowledge or experience is subject to exclusion. *See Salem v. United States Lines Co.,* 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *Castillo,* at 1232–1233; *see also United States v. Arenal,* 768 F.2d 263, 269–70 (8th Cir.1985) (reversing conviction where expert was permitted to suggest an inference that the jury was itself capable of making).

■ We need not decide whether the district court's decision to admit the challenged testimony was manifestly erroneous, however. Rather, assuming that the testimony was properly admitted, we hold that, even when viewed in the light most favorable to the Government, *see Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469–70, 86 L.Ed. 680 (1942), the evidence against Boissoneault was insufficient as a matter of law to support a conviction

for possession with intent to distribute cocaine.

The threshold question in this sufficiency analysis is what weight, if any, should be given to Agent Sullivan's conclusory opinions. In his thoughtful concurrence in *Young*, Judge Newman observed that a Government expert's personal opinion that ambiguous conduct constitutes criminal activity, given its inherently speculative nature, holds only slight probative value. *See Young*, 745 F.2d at 765–66. Reasoning that "[t]he hazard of permitting the opinion in evidence ought to make courts cautious in assessing the sufficiency of a case based heavily on such an opinion," Judge Newman proposed that such opinions not be counted in assessing the legal sufficiency of the evidence. *See id.; see also Brown*, 776 F.2d at 404 n. 1 (Oakes, *J.*, dissenting) (supporting Judge Newman's *Young* proposal). *Cf. United States v. Sette*, 334 F.2d 267, 269 (2d Cir.1964) (reversing conviction for illegal gambling where Government's case rested chiefly on expert's opinion that observed conduct was criminal). In *Brown*, we expressed doubt that "properly admitted evidence should be *totally* excluded from the scale" in assessing the sufficiency of the evidence. *Brown*, 776 F.2d at 403 n. 9 (emphasis added). We agreed, however, that, at least in criminal cases, expert testimony on ultimate issues should be given little weight. *See id.*

Although until today we have not had occasion to apply this rule, it has already taken hold at the district court level. In *United States v. Jones*, 605 F.Supp. 513 (S.D.N.Y.1984), then Chief Judge Motley relied on Judge Newman's concurrence as the basis for vacating a conviction for aiding and abetting the sale of heroin. The Government's "distressingly thin" evidence against Jones, *id.* at 516, consisted of the defendant's presence near the scene of the transaction, his brief talk with the dealer, and the undercover officer's testimony that, in his opinion, Jones was acting as a lookout. There was no evidence of a prior arrangement between Jones and the pusher, no evidence that Jones possessed drugs or drug paraphernalia at any time, no evidence that Jones heard anything said during the sale, and no specific evidence that Jones actually saw the drugs and money change hands. Moreover, none of the undercover agent's pre-marked money was found on the defendant. In concluding that there was insufficient evidence of purposeful conduct to support the conviction, Judge Motley stated that she could not permit the undercover officer's opinion that Jones was acting as a lookout to substitute for evidence of intent. *Id.* at 515.

Here as in *Jones*, the Government offered virtually no evidence from which the requisite criminal intent—intent to distribute—can be inferred. Boissoneault was arrested only after a fortuitous traffic stop for driving while intoxicated. The arresting officer witnessed no surreptitious transactions, no furtive activity—no circumstantial evidence of an actual sale of cocaine. At the time of his arrest, Boissoneault possessed none of the paraphernalia usually possessed by drug dealers, such as scales, beepers, and other devices, nor did he possess any of the materials needed to process cocaine or to package it in druggist folds. Nor was there any evidence that Boissoneault owned a gun or other weapon, which would have helped sustain an inference that he was engaged in the dangerous business of drug trafficking.

What few items were found on Boissoneault and introduced into evidence do not adequately support an inference of intent to distribute. The possession of $1,460 in ten and twenty dollar bills, while consistent with street distribution, is also susceptible to countless inferences not involving illegal activity. Likewise, there are many innocent explanations of the slips of paper seized from appellant.[2] Finally, the quantity of cocaine at issue, 5.31 grams (.19 oz.), was not inconsistent with personal use, *see, e.g., United States v. Gibbs*, 904 F.2d 52, 58 (D.C.Cir.1990) (possession of "a mere 15.5

---

**2.** The two beeper numbers that appear on the slips, for example, could just as easily have belonged to medical doctors as to prospective purchasers of cocaine. As for Government Exhibit 5, the columns of initials and numbers— which, we note, are not preceded by dollar signs—could have been scores from a game or recordings of gambling debts rather than amounts relating to cocaine transactions.

grams of cocaine" not inconsistent with personal use); *United States v. Latham,* 874 F.2d 852, 863 (1st Cir.1989) ("[A]n inference of intent to distribute is not warranted from the possession of one ounce of cocaine."); *United States v. Levy,* 703 F.2d 791, 793 n. 7 (4th Cir.1983) (possession of 4.75 ounces of 95% pure cocaine not *per se* inconsistent with personal use), and the simple fact that the cocaine was packaged in druggist folds is as consistent with the theory that Boissoneault was a recent purchaser and prospective user as it is with the theory that he was a recent processor and prospective dealer. To be sure, Agent Sullivan's "expert" conclusions unambiguously linked Boissoneault to street-level distribution of cocaine; however, as discussed above, such conclusions are entitled to little weight in our sufficiency analysis. We therefore conclude that the evidence was insufficient to justify a rational trier of fact to find beyond a reasonable doubt that Boissoneault had the requisite intent to distribute cocaine. *See Jackson v. Virginia,* 443 U.S. 307, 316–20, 99 S.Ct. 2781, 2787–90, 61 L.Ed.2d 560 (1979).

In finding Boissoneault guilty of possession of cocaine with intent to distribute, the jury necessarily found all the elements of simple possession of cocaine in violation of 21 U.S.C. § 844. The trial court properly instructed the jury on this lesser-included offense, and there is no question that the evidence supports a possession conviction.[3] Therefore, we vacate the conviction and sentence for possession with intent to distribute, and remand for entry of conviction for simple possession and for resentencing accordingly. *See* 28 U.S.C. § 2106 (1988); *United States v. Swiderski,* 548 F.2d 445, 452 (2d Cir.1977); *United States v. Franklin,* 728 F.2d 994, 1000–01 (8th Cir.1984); *Austin v. United States,* 382 F.2d 129, 140–43 (D.C.Cir.1967).

Vacated and remanded.

**3.** Indeed, appellant conceded the elements of knowing possession in his closing statement to the jury.