

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2002

# USA v. Davis

Precedential or Non-Precedential: Non-Precedential

Docket No. 00-3536

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Davis" (2002). *2002 Decisions*. Paper 473.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/473

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 00-3536
_____


UNITED STATES OF AMERICA,

Appellee

v.

THOMAS B. DAVIS,

Appellant


_____


On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Criminal No. 99-cr-00235
(Honorable Sylvia H. Rambo)


_____


Submitted Under Third Circuit LAR 34.1(a)
April 6, 2001

Before:  SCIRICA,  AMBRO, and GIBSON,[*] <u>Circuit Judges</u>.

(Filed:    July 26, 2002)


_____


* The Honorable John R. Gibson, United States Court of Appeals for the Eighth
Circuit, sitting by designation.

OPINION OF THE COURT

JOHN R. GIBSON, Circuit Judge:

Thomas Davis appeals his convictions for receiving, possessing, attempting to possess, and possessing more than three items of, child pornography that has been shipped in interstate commerce under 18 U.S.C. §§ 2252(a)(4)(B), (b)(2), 2252A(a)(2), (a)(5)(B), (b)(2) (1994 & Supp. II 1996). The district court[1] sentenced Davis to sixty-seven months in prison. We affirm.

In June 1995, Special Agent Dennis Guzy, acting on a tip from local law enforcement, began a mail correspondence with Davis as part of an undercover child pornography sting operation. On July 1, 1995, Davis wrote that he "love[d] handsome, hairless or hairy, tall teenage boys (ages 14-17) in every type of sexual photograph [or film]," and that he had "a film of a showering boy who is completely naked, hairless, and I would estimate to be about 10 or 11. Though not legal in the U.S." Davis ultimately broke off the correspondence with Guzy.

In December 1996, Davis responded to an ad placed by United States Postal Inspector David Dirmeyer in a homosexual video club trading directory. The ad offered to trade "Mykonas" videos--videos formerly produced under the name "Overseas Males," and known in the pornographic video community to often contain child pornography. Davis and Dirmeyer proceeded to exchange a series of letters, in one of which Dirmeyer offered to send Davis

---

[1] The Honorable Sylvia H. Rambo, United States District Judge for the Middle District of Pennsylvania.

videos from his collection. Dirmeyer's offer contained a description of three videos: "Jim & Tim," involving "[t]wo real life brothers, age around 20"; "Brother & Me," involving a "little brother Tom [who] was 13"; and "Circle Jerk," involving "[a] group of 3 boys - allegedly cousins aged 14-15." Dirmeyer's letter expressly stated that "[a]ction and ages are as written." Davis chose "Brother & Me," but was in the hospital when a controlled delivery was attempted by Postal Inspector Thomas Kochman. Davis's attempted receipt of "Brother & Me" forms the basis of Count III. See 18 U.S.C. § 2252A(a)(5)(B), (b)(2), (d) (Supp. II 1996) (prohibiting attempts to knowingly possess any video tape containing three or more images of child pornography that has been shipped in interstate commerce).

After returning from the hospital, Davis asked Dirmeyer to resend the tape. Dirmeyer responded with another letter, seeking to confirm that Davis was "still interested in the tape we talked about," and ultimately resent the list of three videos for Davis to choose from.[2] Davis then asked Dirmeyer to choose one for him, writing that he'd "love to see any of the three." Dirmeyer, however, insisted that Davis make his own selection, and Davis ultimately chose "Jim & Tim" and "Circle Jerk." On July 8, 1997, Kochman executed a controlled delivery of the videos. Davis's receipt and possession of "Circle Jerk" forms the basis of Counts I and II. See 18 U.S.C. § 2252A(a)(2), (a)(5)(B) (Supp. II 1996) (prohibiting knowing receipt and possession of child pornography that has been shipped in interstate commerce).

---

[2] At trial, Dirmeyer stated that he sought confirmation before resending the tape because "a period of time had gone by [between Davis's original order and his release from the hospital]. We just wanted to make sure he knew exactly what was going on."

Finally, in an unrelated October 1995 search of a Louisville, Kentucky, home pursuant to another child pornography investigation, postal inspectors found a series of letters from Davis to one Charles Smith.  The letters focused on the two men's mutual fascination with viewing and trading "younger male tapes," and mentioned multiple "Overseas Males" titles.  In separate letters, Davis thanked Smith for sending "OM 118" and  "The Young, Wet and Thai." As to "The Young, Wet and Thai," Davis wrote, on May 6, 1995: "I absolutely loved their youthful torsos - - - so golden tan and smooth in splendid sexual actions! . . . And that hot shower scene . . . was a sure turn-on."  Copies of "OM 118" and "The Young, Wet and Thai" were recovered from Smith's residence.  Davis's possession of "OM 118," "The Young, Wet and Thai," and "Circle Jerk," together with his attempted possession of "Brother & Me," forms the basis of Count IV.  See 18 U.S.C. § 2252 (a)(4)(B), (b)(2), (c) (1994 & Supp. II 1996) (prohibiting knowing possession, or knowing attempted possession, of three or more video tapes containing visual depictions of a minor engaging in sexually explicit conduct, that have been shipped in interstate commerce).

Davis requested a non-jury trial and the court found him guilty on all four counts.  He now challenges the admissibility and sufficiency of certain evidence.  "We recognize that a trial court's determination of admissibility may be overturned only for clear abuse of discretion." Joy Mfg. Co. v. Sola Basic Indus., Inc., 697 F.2d 104, 111 (3d Cir. 1982).  Since the judge here returned a verdict of guilty, "the government is entitled to have us view the evidence in the light most favorable to it.  In evaluating the evidence, we give the prosecution the benefit of all legitimate inferences which might reasonably be drawn from the proven

4

facts." United States v. Hamilton, 457 F.2d 95, 99 (3d Cir. 1972).

I.

Under Counts I and II, Davis was found guilty of receipt and possession of child pornography in the form of the video "Circle Jerk." In order to carry its burden of proof, the government had to prove, among other things, that "Circle Jerk" contained child pornography and that Davis knew "Circle Jerk" contained child pornography. See 18 U.S.C. § 2256(8)(A) (Supp. II 1996) (defining "child pornography" to include "any visual depiction . . . the production of [which] . . . involves the use of a minor engaging in sexually explicit conduct");[3]

---

[3] In the first filed version of this opinion, which we have withdrawn, we cited the definition of child pornography set forth at 18 U.S.C. § 2256(8)(B): "any visual depiction . . . [that] is, or appears to be, of a minor engaging in sexually explicit conduct." Since then, the Supreme Court has concluded that § 2256(8)(B) is overbroad and unconstitutional because it "abridges the freedom to engage in a substantial amount of lawful speech." Ashcroft v. Free Speech Coalition, 122 S. Ct. 1389, 1405 (2002). Davis has properly challenged our reliance upon that definition in his motion for rehearing.

Davis was convicted of the first three counts under 18 U.S.C. § 2252A, which prohibits various types of conduct involving child pornography but does not define child pornography. The definitions of child pornography for this entire chapter, including §§ 2252 and 2252A, are contained in 18 U.S.C. § 2256(8), which in four paragraphs enumerates "prohibited categories of speech." Free Speech Coalition, 122 S. Ct. at 1397. The only citation of this definition of child pornography in briefs to this court was contained in Davis's reply brief, which set out § 2256(8)(A) and (B). While our first filed opinion quoted only paragraph (B), it is evident, however, that in the case before us paragraph (A) applies.

The record demonstrates that the government, the judge, and Davis's counsel at trial all relied upon the "involv[ing] the use of a minor engaging in sexually explicit conduct" prohibited category of speech in determining whether Davis broke the law. Nowhere in the trial record is there a statement of the court, of counsel, or of the witnesses suggesting that Davis could be convicted on the basis of sexually explicit depictions of people 18 years old or older who "appear to be" younger (the possibility which prompted the Court in Free Speech Coalition to invalidate § 2256(8)(B)).

To begin with, the district court at one point stated: "There seems to be a lot of

(continued...)

5

United States v. X-Citement Video, Inc., 513 U.S. 64, 72 (1994) ("Age of minority in § 2252[4] indisputably possesses the same status as an elemental fact . . . ."). Davis argues that the district court erred when it allowed Inspectors Kochman and Dirmeyer to testify on the issue of whether "Circle Jerk" contained child pornography. Davis goes on to argue that, even if it was proper for the district court to admit this testimony, it constituted the only evidence that "Circle Jerk" contained child pornography, and as such was insufficient. Finally, as to Counts I and II, Davis argues the evidence presented at trial was insufficient to prove Davis knew that

---

[3](...continued)

contention here about boys and ages. Does not the statute call for a minor? A minor is anyone under 18." Trial Transcript at 35. The United States Attorney replied in the affirmative. Id. Furthermore, there was repeated testimony that all four tapes at issue contained "minors engaged in sexually explicit conduct." Id. at 103, 105, 111, 116; see also id. at 62 ("[That tape] has children under the age of 18, and they are engaged in sexual acts."), 76 ("In my opinion, they were clearly obviously under 18. It wasn't even close."). Specifically, Inspector Kochman, one of the government's main witnesses testifying to that fact, stated on voir dire that if, after viewing a tape, he determined that "the actors in those tapes were in the age range of 16 to 18, or I could not specifically say that that actor was not 18. . . . I would not testify that that was child pornography." Id. at 101. In addition, the parties used the constitutional definition in stipulating that "'Brother and Me' contains visual images of a minor engaging in sexually explicit conduct and is child pornography as defined in 18 U.S.C. [§] 2256." Id. at 149. Finally, Davis's counsel argued that, in effect, the tapes would not constitute child pornography if the actors were 18 and merely appeared younger. Id. at 72-75.

Hence, the trial and the conviction of Davis were based solely upon § 2256(8)'s paragraph (A), which remains constitutional under New York v. Ferber, 458 U.S. 747 (1982). See Free Speech Coalition, 122 S. Ct. at 1396. Each of the tapes involved a minor engaged in sexually explicit conduct. Cf. United States v. Hay, 231 F.3d 630, 639 (9th Cir. 2000) (upholding conviction where defendant was not specifically charged under 18 U.S.C. § 2256(8) and jury was specifically instructed using constitutional definition of child pornography).

[4] Cf. United States v. Payne, No. MO-00-CR-107, 2000 WL 33348782 (W.D. Tex. Nov. 8, 2000) (mem.) ("While the statute before the Court is 2252A, not 2252(a), . . . the two statutes are similar enough that the knowledge requirement . . . is equally applicable . . . .").

"Circle Jerk" contained child pornography.

A.

Davis argued at trial that in order to prove that "Circle Jerk" contained child pornography, the government had to have experts testify to that fact using scientific analysis. The district court instead admitted the testimony of Inspectors Kochman and Dirmeyer as "lay experts." Inspector Kochman testified that he had years of training and experience in determining the ages of actors on video, that he had filed affidavits and testified in court as to such matters, and that he was one of four postal inspectors nationwide called in to render assistance in this area during a particular child pornography investigation in Los Angeles involving "Overseas Males" videos. He had viewed "Circle Jerk" and determined it contained child pornography. Inspector Dirmeyer testified that he also had training and experience in the area, that he had viewed "Circle Jerk," and that in his opinion the actors were so clearly under eighteen that it "wasn't even close."

Under the version of Rule 701 in effect at the time of Davis's trial, opinion testimony of lay witnesses is admissible where it is rationally based on personal knowledge and helpful to the trier of fact.[5] Fed. R. Evid. 701 (1987) (amended 2000). Expert testimony may be required to enable the fact finder to determine age in cases where the age of the actor in the video is difficult to determine. See United States v. Katz, 178 F.3d 368, 373 (5th Cir. 1999) ("[I]n this case, in which the government must prove that a model, who is post-puberty but

---

[5] Davis does not argue that the testimony was not helpful.

appears quite young, is less than eighteen years old, expert testimony may well be necessary . . . ."); cf. X-Citement Video, 513 U.S. at 72 n.2 ("The opportunity for reasonable mistake as to age increases significantly once the victim is reduced to a visual depiction, unavailable for questioning by the distributor or receiver."). At the same time, "age is a matter on which everyone has an opinion. Knowingly or unknowingly, we all form conclusions about people's ages every day. It is therefore particularly appropriate for a lay witness to express an opinion on the subject." United States v. Yazzie, 976 F.2d 1252, 1256 (9th Cir. 1992). We have held that "a lay witness with first-hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion." Asplundh Mfg. Div. v. Benton Harbor Eng'g, 57 F.3d 1190, 1201-02 (3d Cir. 1995).[6] Since the district court satisfied itself that the two witnesses possessed specialized knowledge, its decision to admit the inspectors' opinion testimony as to the age of the actors was not clearly erroneous regardless of whether we view that testimony as lay opinion testimony akin to that of an expert or merely lay opinion testimony based on ordinary human experience. See United States v.

---

[6] Rule 701 was amended in 2000 to exclude testimony "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. (Rule 702 addresses the admissibility of expert testimony. See Fed. R. Evid. 702.) The amendment was in part a response to our decision in Asplundh. See 57 F.3d at 1201 n.14 (refusing to hold "that all lay witnesses offering opinions that require special knowledge . . . must qualify under Rule 702," but commending the issue to the Judicial Conference Advisory Committee on Rules of Evidence); Fed. R. Evid. 701 advisory committee's notes to 2000 amendments (citing Asplundh). Davis's judgment, however, was imposed in October 2000, while the amendment to Rule 701 became effective in December 2000. Therefore the 2000 amendments to Rule 701 are not applicable here, while Asplundh is.

Stanley, 896 F.2d 450, 452 (10th Cir. 1990) (admitting postal inspector's opinion under Rule 701 as proof that subjects in photographs were under eighteen).

B.

Davis argues that the evidence was not sufficient to prove that "Circle Jerk" contained child pornography. We are not persuaded.

Davis cites the Second Circuit case of United States v. Boissoneault, 926 F.2d 230 (2d Cir. 1991), for the proposition that "at least in criminal cases, expert testimony on ultimate issues should be given little weight." Id. at 233. Boissoneault is much narrower than Davis would have us believe, however, and the statement Davis quotes from that opinion is rooted in the belief that "an expert's personal opinion that certain ambiguous conduct constitutes criminal behavior should be given little, if any, weight in assessing the sufficiency of the evidence." United States v. Duarte, 950 F.2d 1255, 1261 (7th Cir. 1991) (distinguishing Boissoneault in part because that decision is applicable to "experts who testify that a defendant's ambiguous physical conduct constituted criminal behavior"). Without expressing any opinion as to whether Boissoneault reflects the law of this circuit, we conclude it is not applicable here. There is nothing in the record before us to suggest that there was anything ambiguous about the contents of the tape--as opposed to the description of the tape (see below).

In addition to the testimony of the inspectors, the judge had before her the tape itself, which had been admitted into evidence. Davis seems to assume, in making his argument as to this issue, that the judge never viewed the tape. We will not entertain this assumption. In a

9

criminal trial to a judge, either party may request a statement of factual findings. Fed. R. Crim. P. 23(c). Davis did not do so, and we will not assume the trier of fact ignored admitted evidence when Davis failed to exercise his right to test that assumption.

We conclude the evidence was sufficient for the trier of fact to find that "Circle Jerk" contained child pornography. See United States v. Brown, 862 F.2d 1033, 1039-40 (3d Cir. 1988) ("[T]he testimony of the postal inspector provided sufficient evidence from which the jury could, if it desired, find that the tapes which Brown requested did in fact constitute child pornography.").

C.

Davis argues that even if "Circle Jerk" did in fact contain child pornography, the government did not produce sufficient evidence to prove that he knew the actors portrayed were minors. See X-Citement Video, 513 U.S. at 78 ("[T]he term 'knowingly' in § 2252 extends both to the sexually explicit nature of the material and to the age of the performers.").[7] Specifically, he argues that the description of "Circle Jerk" provided by Dirmeyer was too ambiguous to confer knowledge of the age of the actors on him.

Davis ordered a tape describing the actors as "allegedly cousins aged 14 - 15." He argues "allegedly" modifies "aged 14 - 15" and thus he could not have known for certain that the tape contained child pornography. Regardless of the grammatical soundness of that argument, Davis knew the "action and ages [were] as written." He also had previously ordered, and later

---

[7] Davis does not argue that he did not know the materials were sexually explicit.

10

expressed a willingness to receive, another tape ("Brother & Me") unambiguously described as involving a thirteen year-old. We conclude this evidence is sufficient to satisfy the scienter requirement of § 2252A. See United States v. Knox, 32 F.3d 733, 753-54 (3d Cir. 1994) (concluding scienter requirement under § 2252 was satisfied where the ad responded to described the film in question as containing "girls between the ages of 11 and 17"); Brown, 862 F.2d at 1038 (concluding evidence was sufficient to prove that defendant knowingly received child pornography in light of "his solicitation of child pornography as expressed in his letter and other correspondence").

## II.

Davis argues that he abandoned his attempt to receive the tape "Brother & Me."[8] We have recognized, in United States v. Kikumura, 918 F.2d 1084, 1108 (3d Cir. 1990), that Model Penal Code § 5.01 is representative of the "well-settled principles of the law of attempts." Assuming for the purposes of this opinion that the defense of abandonment is available to Davis, that defense is only available if the asserted abandonment was voluntary. See United States v. Shelton, 30 F.3d 702, 706 (6th Cir. 1994) ("[W]ithdrawal, abandonment and renunciation, however characterized, do not provide a defense to an attempt crime. As noted, the attempt crime is complete with proof of intent together with acts constituting a substantial step toward commission of the substantive offense."); Model Penal Code § 5.01(4) ("[I]t is an affirmative defense that he abandoned his effort to commit the crime . . . under

---

[8] The parties stipulated to the fact that "Brother & Me" contained child pornography.

11

circumstances manifesting a complete and voluntary renunciation of his criminal purpose."). Here, the only reason Davis did not receive "Brother & Me" was that he was in the hospital. Following his return from the hospital he asked that it be re-sent. He eventually selected and received a different child pornography video. The district court properly found Davis guilty of attempting to possess child pornography.[9]

## III.

As to Count IV, Davis argues first that there was insufficient evidence to prove that either "OM 118" or "The Young, Wet and Thai" contained images of a minor engaging in sexually explicit conduct. He argues that the testimony of Inspector Kochman should never have been admitted because the tape he was testifying about was not found in Davis's apartment and thus his perception was not rationally based. See Fed. R. Evid. 701. Davis also argues that even if Kochman's testimony was properly admitted, the evidence was not sufficient to convict him of possessing the tapes because neither "OM 118" nor "The Young, Wet and Thai" were ever found in his possession. Since only one of the two tapes is necessary to sustain this count, and since we find sufficient evidence to maintain Davis's conviction on the basis of "The Young, Wet and Thai," we do not address "OM 118."

---

[9] Davis argued in his reply brief that there was insufficient evidence that he knew "Brother & Me" contained three or more images of child pornography. The government filed a motion to strike many of the arguments in the reply brief, arguing that they were raised for the first time in the reply brief. We grant the government's motion as to this particular argument and deny it as to the rest. See Kost v. Kozakiewicz, 1 F.3d 176, 182 n.3 (3d Cir. 1993) ("[W]here an issue is raised for the first time in a reply brief, we deem it insufficiently preserved for review before this court.").

Davis argues that Kochman's testimony should not have been admitted because the tape Kochman viewed was Smith's, not Davis's. However, Kochman was testifying to whether the video production entitled "The Young, Wet and Thai" contained images of a minor engaging in sexually explicit conduct, not whether the particular copy of "The Young, Wet and Thai" Davis possessed contained such images. As such, his testimony was based on his personal viewing of "The Young, Wet and Thai," helpful to the trier of fact, and properly admitted. Cf. Stanley, 896 F.2d at 452 ("Inspector Carr's testimony [as to the age of the subjects depicted in the photographs] was helpful as an explanation of why he ordered a supervised delivery, obtained a search warrant, and seized the defendant's package.").

Davis next argues that even if Kochman's testimony was properly admitted, it was not sufficient to prove "The Young, Wet and Thai" contained images of a minor engaging in sexually explicit conduct. In testifying that "The Young, Wet and Thai" did indeed contain such images, Inspector Kochman testified that he had used stop action and applied the Tanner scale. See United States v. Long, 108 F.3d 1377 (6th Cir. 1997) (unpublished decision) (describing Tanner scale as "a methodology used to help doctors measure the stages of puberty in a child"). On cross, Davis's counsel attempted to impeach Kochman's testimony that there were multiple scenes of minors by referring to the report of a Dr. Charles F. Johnson indicating that there was only one scene in "The Young, Wet and Thai" involving a minor. However, only one scene of a minor engaging in sexually explicit conduct is required. See 18 U.S.C. § 2252(a)(4)(B)(i), **(c)** (prohibiting knowing possession of three or more video tapes containing "any visual depiction . . . of a minor engaging in sexually explicit conduct"). In addition, the tape was

13

admitted into evidence. Based on our discussion above as to Counts I and II, we conclude the evidence here was sufficient to find that "The Young, Wet and Thai" contained images of a minor engaging in sexually explicit conduct.

Finally, Davis argues that the evidence was insufficient to prove he possessed "The Young, Wet and Thai." In a May 6, 1995, letter to Smith, Davis thanked Smith for sending him "The Young, Wet and Thai." In that same letter, Davis referred to the use of copies: "You mentioned you have 'Boys in The River Kwai' and 'Thai Treasures'. Of course I'd love to see copies of these . . . . . or should it be somehow easier to copy . . . . anything German . . . ." He also described a particularly "hot shower scene" in "The Young, Wet and Thai." Less than two months later he sent a letter to Guzy describing a film he had that included a scene "of a showering boy . . . not legal in the U.S." A rational trier of fact could find this evidence sufficient to conclude Davis had a copy of Smith's version of "The Young, Wet and Thai.". See Jackson v. Virginia, 443 U.S. 307, 319 (1979) ("[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."), quoted in Government of the Virgin Islands v. Edwards, 903 F.2d 267, 270 (3d Cir. 1990) ("The evidence against Edwards . . . was circumstantial. However, that does not mean that it does not provide an adequate basis for the jury verdict.").

## IV.

We affirm the judgment of the district court.

14

TO THE CLERK:

Please file the foregoing opinion.

 /s/ John R. Gibson 
Circuit Judge